**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.:17-CV-22530-Cooke/Goodman

ANDRES GOMEZ,

      Plaintiff,

vs.

SKECHERS USA, INC.,

      Defendant.

_____/


**DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................3

        A.      Plaintiff's Allegations in the Complaint ..................................................3

        B.      Government Regulation of Website Accessibility ....................................4

III.    ARGUMENT .........................................................................................................5

        A.      Legal Standard Governing a Motion to Dismiss......................................5

        B.      Plaintiff's ADA Claim Fails Because the Complaint Does Not Allege
                Discrimination in the Enjoyment of a Place of Public Accommodation ...............6

                1.      Skechers.com Is Not a Place of Public Accommodation............................6

                2.      Plaintiff Fails To Allege a Nexus Between Skechers.com and
                        Skechers' Physical Retail Locations..................................................8

                3.      Plaintiff Has Not Alleged that the Design of Skechers.com
                        Affected His Personal Use or Enjoyment of Skechers' Retail
                        Locations..............................................................................10

        C.      Even if The Website is a Place of Public Accommodation, Plaintiff's ADA
                Claim Violates Skechers' Constitutional Right to Due Process ..........................12

IV.     CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Access Now, Inc. v. Southwest Airlines, Co.*,
    227 F. Supp. 2d 1312 (S.D. Fla. 2002) ....................................................................6, 7, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................5

*Brother v. CPL Investments, Inc.*,
    317 F. Supp. 2d 1358 (S.D. Fla. 2004) .......................................................................14

*Ford v. Schering–Plough Corp.*,
    145 F.3d 601 (3rd Cir. 1998) .......................................................................................7

*Georgia Pacific Corp. v. Occupational Safety & Health Review Commission*,
    25 F.3d 999 (11th Cir. 1994) ......................................................................................12

*Gil v. Winn Dixie Stores, Inc.*,
    --- F. Supp. 3d ---, No. 16-23020-CIV, 2017 WL 2609330
    (S.D. Fla. Mar. 15, 2017) ....................................................................................7, 8, 9

*Gomez v. Bang & Olufsen Am., Inc.*,
    No. 1:16-CV-23801, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ...................2, 7, 8, 9, 11, 12

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)....................................................................................................12

*Independent Living Resources v. Oregon Arena Corp.*,
    982 F. Supp. 698 (D. Or. 1997) ...................................................................................15

*Kidwell v. Florida Commission on Human Relations*,
    No. 2:16-CV-403-FTM-99CM, 2017 WL 176897 (M.D. Fla. Jan. 17, 2017) .........................7

*Louie v. NFL*,
    185 F. Supp. 2d 1306 (S.D. Fla. 2002) .........................................................................6

*Monteleone v. Palmer*,
    No. 5:09CV202-RH/MD, 2009 WL 3067069 (N.D. Fla. 2009).............................................12

*National Federation of the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ..........................................................................9

i

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Parker v. Metropolitan Life Insurance Co.*,
　　121 F.3d 1006 (6th Cir. 1997) ...................................................................................7

*Rendon v. Valleycrest Products, Ltd.*,
　　294 F.3d 1279 (11th Cir. 2002) ...........................................................................6, 7, 8

*Robles v. Dominos Pizza LLC*,
　　No. CV 16–06599 SJO, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017)...........................9, 14

*Stevens v. Premier Cruises, Inc.*,
　　215 F.3d 1237 (11th Cir. 2000) ...................................................................................7

*Weyer v. Twentieth Century Fox Film Corp.*,
　　198 F.3d 1104 (9th Cir. 2000) ....................................................................................7

**FEDERAL STATUTES**

42 U.S.C. § 12101...........................................................................................................1

42 U.S.C. § 12181(7) ...................................................................................................6, 7

42 U.S.C. § 12182(a) ..............................................................................................1, 6, 10

**FEDERAL RULES**

Fed. R. Civ. Proc.12(b)(6) .............................................................................................1

**FEDERAL ADMINISTRATIVE MATERIALS**

*ADA Standards for Accessible Design*, 28 C.F.R. pt. 36 (1991) ..................................4, 14

*Introduction to the Unified Agenda of Federal Regulatory and Deregulatory
　　Actions*, 80 Fed. Reg. 77710, 77807 (Dec. 15, 2015) (*Department of Justice
　　(DOJ)—Fall 2015, Statement of Regulatory Priorities*)......................................5, 13

*Nondiscrimination on the Basis of Disability; Accessibility of Web Information
　　and Services of State and Local Government Entities and Public
　　Accommodations*, 75 Fed. Reg. 43460 (July 26, 2010) ...................................4, 5, 13

Defendant Skechers USA, Inc. ("Skechers"), by and through its undersigned counsel, respectfully moves to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) and submits this memorandum of law in support of its motion.

## I.       INTRODUCTION

Defendant Skechers is a footwear and apparel company.  Plaintiff's complaint alleges that Skechers' website, skechers.com, violates the Americans with Disabilities Act (the "ADA") because it purportedly does not comply with certain voluntary internet-accessibility standards developed by a private organization.  Plaintiff's suit fails on two independent grounds.

First, Plaintiff does not allege an indispensable threshold requirement for bringing suit under Title III of the ADA:  that he was discriminated against in his use or enjoyment of a "place of public accommodation."  42 U.S.C. § 12182(a).  Courts in the Eleventh Circuit have uniformly held that websites are not places of public accommodation.  Plaintiff's claim of disability discrimination rests entirely on the allegation that he was denied what he deemed suitable access to Skechers' *website*.  Plaintiff does not allege that he ever visited, or even intended to visit, a Skechers retail store, or that he was ever denied appropriate access to a retail store.  To be clear, Skechers is committed to serving people of all abilities, and its website has numerous features that permit visually impaired users to access it, even if not required by the ADA.  But, its website cannot be subject to this ADA suit.

An allegedly inaccessible commercial website can only give rise to liability under the ADA in one limited circumstance: when the website has such a close nexus with a place of public accommodation (typically, the company's retail stores) that the website obstructs disabled customers' full use or enjoyment *of the retail stores*.  For example, such a nexus may exist when purchases at the brick and mortar store can be ordered online before being picked up at the store.  Plaintiff has not pled such a close nexus here.  As alleged in the complaint, the only connection

1

between skechers.com and Skechers' retail locations is that users of the website can look up the location of the retail stores and browse some of the merchandise that might be on offer there. Neither of these features impacts the ability of disabled customers to use and enjoy Skechers' retail stores to the same extent as nondisabled customers. *See Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-CV-23801, 2017 WL 1957182, at *3 (S.D. Fla. Feb. 2, 2017) (finding such allegations insufficient to support an ADA claim).

Even if there were the required nexus, Plaintiff has also failed to allege that the design of the Skechers website had any effect whatsoever on *his own* personal enjoyment of Skechers' retail locations.  Plaintiff does not allege he ever visited or even intended to patronize these stores.  His complaint is about the accessibility of the website alone.

For all these reasons, Plaintiff has not alleged that he was denied public accommodations on account of his disability, and his complaint must be dismissed.  Indeed, another court in this district recently dismissed a nearly identical suit by this same Plaintiff on this ground.  *Id.*

Second, even where a website is so intricately linked with a physical space that it is a place of public accommodation under the ADA, it is a violation of due process to enforce implementation of the private accessibility standards that Skechers is alleged to have violated here.  Plaintiff seeks to impose liability on Skechers for operating a website that fails to comply with the "WCAG" guidelines, which are voluntary website accessibility guidelines developed by a non-governmental international organization called W3C.[1]  Plaintiff seeks to hold Skechers liable for allegedly failing to comply with the WCAG guidelines in spite of the fact that the federal agency responsible for promulgating regulations interpreting the ADA—the Department

---

[1] Skechers disputes that its website fails to comply with the WCAG guidelines or that its website is inaccessible to visually impaired users in any other respect.  For purposes of this motion to dismiss, however, Skechers assumes the truth of the allegations in Plaintiff's complaint, as it must.

of Justice—is in the middle of a rulemaking process in which it is evaluating whether to adopt the WCAG guidelines, and has yet to issue mandatory rules on website accessibility.  Imposing liability on Skechers for allegedly violating the WCAG guidelines *before* the Department of Justice has finally decided whether to adopt them would violate the basic due-process principle that defendants are entitled to sufficient notice as to what behavior complies with the law.

## II.    BACKGROUND

### A.    Plaintiff's Allegations in the Complaint[2]

Plaintiff alleges that he is a visually impaired individual who has visited Skechers' website, www.skechers.com.  (Compl. ¶¶ 2–3.)  The complaint is devoid of specific factual allegations about Plaintiff's use of Skechers' website:  Plaintiff does not allege when he visited the Skechers website, how many times he visited the website, what pages of the website he attempted to visit, or why he visited the website.

Plaintiff alleges that he uses unspecified "screen reader software" to access the internet, and that, despite "several attempts," the Skechers website "did not integrate with" that screen-reader software.  (*Id.* ¶ 22.)  The complaint does not state any facts about how the Skechers website failed to interact properly with Plaintiff's screen-reader software or which parts of the website are allegedly incompatible with the software.  Plaintiff alleges that Skechers' website fails to comply with the "AA level" of "Version 2.0 of the Web Content Accessibility Guidelines" ("WCAG"), published by an "international website standards organization" called W3C.  (*Id.* ¶¶ 21, 23.)  But the complaint contains no detail about what aspects of the Skechers'

---

[2] Plaintiff has filed numerous cookie-cutter suits against other businesses on this same ground in this and other forums.  Indeed, Plaintiff's form complaint was not fully updated to reflect Skechers' business as a footwear retailer: the complaint mistakenly avers that Skechers "owns, operates and maintains several brick and mortar pet supply stores."  (Compl. ¶ 16.)

website are allegedly non-compliant with the WCAG standards or which of the WCAG standards the Skechers website allegedly violates.

Plaintiff alleges that, as a result of being "unable to use [Skechers'] website," he suffered "tangible injuries," including "loss of dignity" and "mental anguish." (*Id.* ¶ 25.) Specifically, Plaintiff alleges that if Skechers' website were accessible to him, he could "independently research products and services offered at [Skechers'] stores, obtain information with regard to maintaining a healthy and trendy lifestyle, shop online, as well as enjoy the other functions on the website." (*Id.* ¶ 27.) Plaintiff does not allege that he was ever denied access to a physical Skechers store, nor even that he ever attempted to visit a physical Skechers retail store. Plaintiff also does not allege that his purported inability to use Skechers' website had any impact on his ability to use or enjoy Skechers' physical locations.

## B.     Government Regulation of Website Accessibility

The ADA was enacted in 1990, and the Department of Justice ("DOJ") promulgated its implementing regulations in 1991. *See* 42 U.S.C. § 12101 *et seq.*; *ADA Standards for Accessible Design*, 28 C.F.R. pt. 36 (1991). In 2010, the DOJ issued a Notice of Proposed Rulemaking in which it announced it was considering for the first time issuing regulations relating to the accessibility of internet sites to disabled users. *Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations*, 75 Fed. Reg. 43460 (July 26, 2010) (hereafter "NOPR"). Although the DOJ acknowledged that "[t]he Internet has been governed by a variety of voluntary standards or structures developed through nonprofit organizations using multinational collaborative efforts," the DOJ stated that "clear guidance on what is required under the ADA does not exist." *Id.* at 43463–64.

The NOPR discussed the WCAG accessibility standards in detail.  The DOJ explained that the WCAG is a set of "*voluntary* international guidelines for Web accessibility," with three different "conformance levels": A, AA, or AAA, with Level A representing "criteria that provide basic Web accessibility and that are the most feasible for Web content developers"; Level AAA representing "criteria that may be less feasible for Web content developers"; and Level AA an intermediate position between the two.  *Id.* at 43465 (emphasis added).  In light of these varying standards and the different "compliance burdens and costs" each entails, the NOPR sought comments from the public as to (1) whether the DOJ should adopt WCAG at all; and (2) if so, what conformance level of WCAG it should adopt.  *Id.*  Plaintiff's complaint alleges that Skechers' website "does not meet the WCAG 2.0 AA level of accessibility," but does not address whether Skechers' website meets the WCAG 2.0 Level A standard.  (Compl. ¶ 23.)

The DOJ has not yet issued a final rule.  In December 2015, the DOJ announced that it expects to publish its proposed rules in 2018.  *See Introduction to the Unified Agenda of Federal Regulatory and Deregulatory Actions*, 80 Fed. Reg. 77710, 77807 (Dec. 15, 2015) (*Department of Justice (DOJ)—Fall 2015, Statement of Regulatory Priorities*).

### III.    ARGUMENT

#### A.    Legal Standard Governing a Motion to Dismiss

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[A] formulaic recitation of the elements of the cause of action will not do"; to state a claim, the

allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).

**B.     Plaintiff's ADA Claim Fails Because the Complaint Does Not Allege Discrimination in the Enjoyment of a Place of Public Accommodation**

Title III of the ADA bars discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). To state a claim for relief under Title III, a plaintiff must therefore allege "(1) that he is a qualified individual with a disability; (2) that he was discriminated against in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation; and (3) that the discrimination was on the basis of his disability." *Louie v. NFL*, 185 F. Supp. 2d 1306, 1308 (S.D. Fla. 2002).

Plaintiff's ADA claim fails as a threshold matter because the complaint does not allege that Plaintiff was discriminated against "in the full and equal enjoyment … of a place of public accommodation." 42 U.S.C. § 12182(a). Courts in the Eleventh Circuit have uniformly held that websites are not places of public accommodation unless a sufficiently close nexus exists between the inaccessibility of a commercial website and an individual's' inability to use or enjoy the defendant's physical retail stores. Plaintiff has failed to allege the requisite nexus here.

**1.     Skechers.com Is Not a Place of Public Accommodation**

An entity is a "place of public accommodation" if its operations "affect commerce" and it falls within one of twelve categories enumerated at 42 U.S.C. § 12181(7)(A)–(L). *See Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 & n.3 (11th Cir. 2002). None of the enumerated categories of "public accommodations" includes websites.

6

The Eleventh Circuit has held that a place of public accommodation must be a "concrete space," not an intangible one. *Rendon*, 294 F.3d at 1284; *see also Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002) (observing that "the Eleventh Circuit has recognized Congress' clear intent that Title III of the ADA governs solely access to physical, concrete places of public accommodation" and citing *Rendon*).  Following *Rendon*, district courts in the Eleventh Circuit have "uniformly held" held that websites, standing alone, are not "places of public accommodation."[3]  *Gil v. Winn Dixie Stores, Inc.*, --- F. Supp. 3d ---, No. 16-23020-CIV, 2017 WL 2609330, at *4 (S.D. Fla. Mar. 15, 2017) ("District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that the ADA does not apply to a website that is wholly unconnected to a physical location."); *see also Bang & Olufsen*, 2017 WL 1957182, at *3 ("[A] website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA."); *Access Now*, 227 F. Supp. 2d at 1321 (holding that "the Internet website at issue here is [not] a physical, public accommodation itself as defined by the ADA"); *Kidwell v. Fla. Comm'n on Human Relations*, No. 2:16-CV-403-FTM-99CM, 2017 WL 176897, at *5 (M.D. Fla. Jan. 17, 2017) (website is not a public accommodation because it is "located in no particular geographical location" (quoting *Access Now*, 227 F. Supp. 2d at 1321)).

---

[3] The rule that district courts in the Eleventh Circuit have developed—that websites are not themselves places of public accommodation—is consistent with the Eleventh Circuit's holding that Title III of the ADA offers a "*comprehensive* definition of 'public accommodation'" (from which websites are conspicuously absent).  *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1240–41 (11th Cir. 2000) (citing 42 U.S.C. § 12181(7)).  Several other circuits are in accord. *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (concluding that places of public accommodation are "actual, physical places"); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 614 (3rd Cir. 1998) (holding that the term "public accommodation" refers to physical places); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) (same).

To the extent Plaintiff's complaint rests on the allegation that "[Skechers'] website is a place of public accommodation" under the ADA, it fails to state a claim of disability discrimination and must be dismissed.  (Compl. ¶ 19.)

### 2. Plaintiff Fails To Allege a Nexus Between Skechers.com and Skechers' Physical Retail Locations

A plaintiff may state a claim under Title III of the ADA by alleging that "intangible barriers" restrict her "ability to enjoy" the "goods, services and privileges" of a public accommodation.  *Rendon*, 294 F.3d at 1283 (citation omitted).  A disability-discrimination claim based on the accessibility of a website will survive a motion to dismiss on this basis *only* if the complaint "establish[es] a nexus between the website and the physical premises of a public accommodation," *Winn Dixie*, 2017 WL 2609330, at *4, such that it is clear that the "website's inaccessibility impedes the plaintiff's access to a specific, physical, concrete space," *Bang & Olufsen*, 2017 WL 1957182, at *3 (internal quotation marks omitted).  To sufficiently allege a nexus between an allegedly inaccessible website and a concrete public accommodation, a company's website must be "heavily integrated with" and "operate[] as a gateway to" its physical store locations.  *Winn Dixie*, 2017 WL 2609330, at *5.

Plaintiff's complaint fails to establish the requisite nexus between the Skechers website and his "access to a specific physical, concrete space."  *Access Now*, 227 F. Supp. 2d at 1321.  The only factual allegation in Plaintiff's complaint that even suggests a relationship between skechers.com and Skechers' physical stores is the allegation that the website "interact[s] with" Skechers' stores by displaying "available products" and "locating physical stores."  (Compl. ¶¶ 4, 18.)  This falls far short of establishing that skechers.com "operates as a gateway" to Skechers' physical stores.  *Winn Dixie*, 2017 WL 2609330, at *5.  In *Winn Dixie*, the plaintiff alleged that the website of the supermarket chain Winn Dixie allowed customers to fill or refill

medical prescriptions for pick-up at in-store pharmacies.  *Id.* at *3.  In this manner, Winn Dixie's website acted as a "gateway" to its pharmacies, and the company's allegedly inaccessible website operated as an "intangible barrier[]" that "restrict[ed] a disabled person's ability to enjoy [Winn Dixie's] goods, services and privileges."  *Id.* at *5.  The inaccessibility of the Winn Dixie website to vision-impaired users "prevented the plaintiffs from accessing a privilege" that Winn Dixie's brick-and-mortar pharmacies afforded to nondisabled customers—namely, the ability to do in-store pick-up of medicines ordered online.  *Id.*; *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 949 (N.D. Cal. 2006) (sufficient nexus between Target.com and Target store locations existed where plaintiff alleged that Target customers could use the website to refill prescriptions and order photo prints for in-store pick-up); *Robles v. Dominos Pizza LLC*, No. CV 16–06599 SJO (SPx), 2017 WL 1330216, at *3 n.1 (C.D. Cal. Mar. 20, 2017) (nexus existed between Dominos Pizza restaurants and website that could be used to place pizza orders).

By contrast, the complaint here does not describe any features of the Skechers website that give online users superior access to goods or services in Skechers stores.  The features of Skechers' website that Plaintiff alleges are connected in some way to its retail stores—the ability to look up the location of retail stores, and the ability to browse available products (Compl. ¶ 4)—have no impact on the customer experience in retail stores.  The complaint does not allege that vision-impaired users who are allegedly unable to access skechers.com find it impossible to locate or shop at Skechers stores.  Nor does the complaint plead that visually impaired customers' alleged inability to browse products on skechers.com somehow renders them unable to browse or purchase merchandise from a Skechers retail store on equal footing with nondisabled customers.  *See Bang & Olufsen*, 2017 WL 1957182, at *4 (finding such website features insufficient).  Unlike the websites in *Winn Dixie*, *Target Corp.*, and *Dominos Pizza*—

which could be used to fill in-store prescriptions, print in-store photos, or order pizza for in-store pickup—skechers.com does not serve as a gateway to brick-and-mortar services.[4]

Plaintiff has not alleged that the purported inaccessibility of the Skechers website interferes with the "full and equal enjoyment" of the goods and services offered at Skechers' physical stores.  42 U.S.C. § 12182(a).  "Having failed to establish a nexus between [skechers].com and a physical, concrete place of public accommodation," Plaintiff fails to state a claim upon which relief can be granted under Title III of the ADA.  *Access Now*, 227 F. Supp. 2d at 1321.

### 3. Plaintiff Has Not Alleged that the Design of Skechers.com Affected His Personal Use or Enjoyment of Skechers' Retail Locations

Even if Plaintiff could allege the requisite nexus between Skechers' website and its physical retail stores—and he cannot—his complaint would still fail because his allegations that Skechers' website could *hypothetically* impede a visually impaired person from enjoying all of the benefits of Skechers' retail locations are insufficient to state a claim in the absence of allegations that the website *actually* impeded *him*.

Plaintiff does not allege that he ever intended to visit or patronize one of Skechers' retail stores—much less that his alleged inability to access the Skechers website impeded his use or enjoyment of Skechers' retail stores in any respect.  To the contrary, the gravamen of Plaintiff's complaint is that he was denied "full and equal access to the website" itself.  (Compl. ¶ 7; *see also id.* ¶ 25 (alleging that Plaintiff was injured as a result of being "unable to use Defendant's

---

[4] The Skechers website, as described in the complaint, functions more like a digital catalogue, providing prospective shoppers with stores locations and information about the merchandise for sale.  (*See* Compl. ¶ 4 (alleging that skechers.com "interact[s] with Defendant's stores, including available products, locating physical stores and other functions ….").)  Clearly, a company does not violate Title III of the ADA by, for instance, failing to publish a braille version of a catalogue it mails to prospective customers.

website").)  Most tellingly, Plaintiff pleads that if Skechers' website *were* accessible to him through screen-reading software, he would be able to better "enjoy … functions *on the website*"—*not* that he would be able to better access Skechers' brick-and-mortar stores:

> If Defendants' website was accessible, Plaintiff could independently research products and services offered at its stores, obtain information with regard to maintaining a healthy and trendy lifestyle, shop online, as well as enjoy the other functions on the website.

(*Id.* ¶ 27.)  Similarly, Plaintiff's allegations about the injury he suffered do not suggest that he was injured in connection with being denied access to a concrete place of public accommodation, such as a store.  Rather, Plaintiff alleges that he suffered "loss of dignity, mental anguish and other tangible injuries" as a result of being "unable to use Defendant's *website*."  (*Id.* ¶ 25 (emphasis added).)

Another court in this district recently rejected such purely hypothetical allegations as insufficient to support a disability-discrimination claim in a case brought by the same Plaintiff with nearly identical factual allegations.  *See Bang & Olufsen*, 2017 WL 1957182, at *4.  In *Bang & Olufsen*, the plaintiff alleged that the defendant's website allowed customers to (1) locate physical Bang & Olufsen stores throughout the United States; (2) browse and search for merchandise; (3) research information about Bang & Olufsen merchandise and custom installation services; and (4) make private appointments with sales representatives at Bang & Olufsen's brick-and-mortar retail locations.  *Id.* at *1.  But the plaintiff did not allege that he ever sought to patronize a Bang & Olufsen retail store or use the website to book an in-store appointment, and all of his specific factual allegations—like Plaintiff's here—related to his access to Bang & Olufsen's commercial website, not its stores.  *Id.* at *4.

The Court dismissed the complaint, holding that, even if the alleged features of the website could hypothetically establish "some nexus between the website and the physical place

of public accommodation," the plaintiff had "fail[ed] to allege any facts that Bang and Olufsen's website impeded *his own* personal enjoyment of the goods and services offered at its retail locations." *Id.* at *3–4 (emphasis added).  The Court explained that the "generalized grievances" in the plaintiff's complaint were "wholly unconnected to any harm he actually suffered at the place of public accommodation (i.e. the concrete, physical store)" and were "therefore insufficient to survive a motion to dismiss." *Id.* at *4.

Here, Plaintiff's complaint fails to state a claim for the same reason.  As in *Bang & Olufsen*, Plaintiff's grievance "seems to be that Defendant's website does not provide a visually impaired person with the same online-shopping experience as non-disabled persons." *Id.* at *4; (*see also* Compl. ¶ 27 (alleging that if Skechers.com were accessible Plaintiff would "shop online" and "enjoy the other functions on the website")).)  But the ADA does not impose such a requirement.  All it requires is that, "if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store." *Bang & Olufsen*, 2017 WL 1957182, at *5.  Because the complaint contains no allegation that Skechers' website impeded his own full use and enjoyment of Skechers' brick-and-mortar stores, the complaint must be dismissed.

C.     **Even if The Website is a Place of Public Accommodation, Plaintiff's ADA Claim Violates Skechers' Constitutional Right to Due Process**

Statutes and regulations which permit monetary penalties against those who violate them must give defendants "fair warning of the conduct [they] prohibit[] or require[]." *Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999, 1005 (11th Cir. 1994).  This is a bedrock requirement of due process, which "requires prior notice, or 'fair warning,' of proscribed conduct." *Monteleone v. Palmer*, No. 5:09CV202-RH/MD, 2009 WL 3067069, at *5 n.2 (N.D. Fla. 2009); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)

("[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.").

This lawsuit offers a paradigmatic example of a case in which imposing liability on the defendant would violate fundamental principles of due process.  Plaintiff's complaint offers essentially no detail about what features of the Skechers website in particular violate the ADA. The only clue comes in paragraphs 21 through 23 of the complaint, where Plaintiff alleges that skechers.com "does not meet the WCAG 2.0 AA level of accessibility"—a standard that, Plaintiff misleadingly alleges, "ha[s] been endorsed by the United States Department of Justice." In fact, the DOJ has expressly solicited public comment in a Notice of Proposed Rulemaking as to whether the privately promulgated WCAG 2.0 guidelines ought to be adopted at all, and, if so, which of the three compliance levels—A, AA, or AAA—ought to obtain.  *See* NOPR, 75 Fed. Reg. at 43465.  The DOJ has not yet issued proposed rules, though it intends to do so in 2018. *See DOJ Statement of Regulatory Priorities*, 80 Fed. Reg. at 77807.

Until the DOJ issues clear guidelines about website accessibility that either adopt or decline to adopt the WCAG standards, finding an ADA violation on the basis of a website's failure to comply with the WCAG 2.0 AA compliance level constitutes a deprivation of due process.  Because they are published by an international nonprofit organization, the WCAG guidelines are subject to change at any time, without the formal notice-and-comment process that characterizes governmental agency rulemaking in the United States.  Until the DOJ acts on the NOPR, website operators also have no way to predict which of the three WCAG levels sets the standard for ADA compliance.  Plaintiff alleges that skechers.com "does not meet the WCAG 2.0 *AA* level of accessibility" (Compl. ¶ 23), but there is no reason to think that the AA level—

13

rather than the less stringent A level—should determine whether a website is ADA-compliant. Plaintiff merely asserts it.

A federal court recently dismissed a similar complaint on due process grounds.  In *Robles v. Dominos Pizza, LLC*, the Central District of California heard a motion to dismiss a complaint in which a visually impaired plaintiff alleged that Dominos Pizza's website did not work properly with his screen-reading software and did not comply with WCAG 2.0.  *See* 2017 WL 1330216, at *1.  The court granted the defendant's due process challenge, holding that plaintiff's complaint "fl[ew] in the face of due process" by seeking to "impose on all regulated persons and entities a requirement that they 'compl[y] with the WCAG 2.0 Guidelines' without specifying a particular level of success criteria and without the DOJ offering meaningful guidance on this topic."  *Id.* at *5.  In dismissing the complaint, the court observed that it was "unable to locate a single case in which a court has suggested, much less held, that persons and entities subject to Title III that have chosen to offer online access to their goods or services must do so in a manner that satisfies a particular WCAG conformance level."  *Id.* at *8.

Plaintiff's inchoate claim that Skechers' website violates unspecified sections of accessibility guidelines that the DOJ has yet to approve or reject contrasts sharply with how the ADA works in the context of brick-and-mortar accommodations.  When a new building is constructed, its ADA compliance *vel non* is determined by whether it complies with the specific, detailed standards set forth in 28 C.F. R. Part 36.  *See Brother v. CPL Invs, Inc.*, 317 F. Supp. 2d 1358, 1370 (S.D. Fla. 2004).  Because those standards are formally codified in the Code of Federal Regulations, companies or individuals who construct new public accommodations have clear guidance as to which construction and design choices will lead to legal liability under the ADA and which will not.  *See Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 714 (D.

14

Or. 1997) ("The regulations establish a *national standard* for minimum levels of accessibility in all new facilities.") (emphasis added).  In designing websites, by contrast, companies are left to guess whether they can be haled into court, as Skechers has been here, for failing to comply with ambiguous standards set by a private international consortium.

Until the DOJ adopts specific and concrete accessibility standards for commercial websites that serve as places of public accommodation, there can be no finding that a website violates the ADA because it fails to comply with the not-yet-adopted WCAG standard.  To hold otherwise would violate due process.

## IV.    CONCLUSION

The Court should dismiss Plaintiff's complaint with prejudice.


DATED: August 18, 2017                          Respectfully submitted,


                                                */s/ David M. Buckner*
                                                David M. Buckner
                                                Florida Bar No. 0060550
                                                *david@bucknermiles.com*
                                                Brett E. von Borke
                                                Fla. Bar No.: 0044802
                                                *vonborke@bucknermiles.com*
                                                BUCKNER + MILES
                                                3350 Mary Street
                                                Miami, Florida 33133
                                                Telephone No.:  (305) 964-8003
                                                Facsimile No.:   (786) 523-0485

*/s/ Tamerlin J. Godley*

Brad D. Brian
*brad.brian@mto.com*
Tamerlin J. Godley
*tamerlin.godley@mto.com*
Jordan D. Segall
*jordan.segall@mto.com*
(*each admitted pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone No.:  (213) 683-9100
Facsimile No.:   (213) 687-3702

*Attorneys for Defendant Skechers*
*USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

August 18, 2017 on the following counsel of record:

Anthony J. Perez                    *Attorneys for Plaintiff Andres Gomez*
ajperez@lawgmp.com
Alfredo Garcia-Menocal
agarciamenocal@gmplaw.com
GARCIA-MENOCAL & PEREZ, P.L.
Marina Lakes, No. 3
4937 S.W. 74th Court
Miami, FL 33155
Telephone:   (305) 553-3464
Facsimile:   (305) 553-3031

                                        */s/ David M. Buckner*
                                        David M. Buckner